**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

PHILLIP G. DUSSETT, JR.                                    CIVIL ACTION

VERSUS                                                            NO.    16-12663

DARRYL VANNOY, WARDEN                            SECTION "J"(5)

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Phillip Dussett, Jr., is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    In 2009, he and co-defendant Devion Trim were charged by bill of information with attempted second-degree murder in violation of La. Rev. Stat. § 14:27:30.1.[1]    On August 24, 2010, the State filed a superseding bill of information charging Dussett and Trim with attempted first-degree murder in violation of La. Rev. Stat. § 14:27:30.[2]    The superseding information was based on information that the

---

[1]  State Rec., Vol. 1 of 12, Bill of Information, 1/26/09.

[2]  State Rec., Vol. 1 of 12, Superseding Bill of Information, 8/24/10.

victim, Conway Dennis, had accused Dussett and Trim of murdering Frankie Williams.    On August 3, 2011, a jury found both Dussett and Trim guilty as charged.[3]    On September 22, 2011, his motion for arrest of judgment and alternative motion for new trial having been denied, Dussett was sentenced to 40 years at hard labor without benefit of probation, parole or suspension of sentence.[4]

On direct appeal, Dussett asserted that his sentence was constitutionally excessive and that his trial counsel rendered him ineffective assistance of counsel in failing to file a motion to reconsider the sentence.    On December 18, 2012, the Louisiana Fifth Circuit Court of Appeal affirmed Dussett's sentence.[5]    Dussett sought review in a counseled writ application filed with the Louisiana Supreme Court.    The Louisiana Supreme Court denied the writ application on June 21, 2013.[6]

On August 14, 2014, Dussett filed an application for post-conviction relief with the state district court.[7]    In that application, he asserted his appellate counsel rendered him ineffective assistance by filing what constituted an inappropriate *Anders* brief and failing to obtain a complete record.    He also claimed appellate counsel was ineffective for failing to challenge (1) the sufficiency of the evidence, (2) the admission of evidence that he was a

---

[3]  State Rec., Vol. 1 of 12, Minute Entry, 8/3/11; *see also* Jury Verdict.

[4]  State Rec., Vol. 1 of 12, Minute Entry, 9/22/11; Commitment Order; Vol. 6 of 12, Sentencing Transcript.

[5]  *State v. Dussett*, 2012-KA-356 (La. App. 5 Cir. 12/18/12), 106 So. 3d 1203.    State Rec., Vol. 9 of 12

[6]  *State v. Dussett*, 2013-K-0154 (La. 6/21/13) (Mem.), 118 So. 3d 410.    State Rec., Vol. 9 of 12.

[7]  State Rec., Vol. 1 of 12, Uniform Application for Post-Conviction Relief.    Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). The post-conviction application made a part of the state record is dated August 14, 2014.

suspect in Frankie Williams' murder, and (3) the trial court's denial of a mistrial.    He claimed his trial counsel was ineffective for failing to examine jail telephone records and for failing to advise him of a favorable plea offer.    Dussett and Trim filed a joint petition for leave to amend and supplement their post-conviction applications and a supporting brief.[8] The additional claims asserted were defective bill of information, insufficient evidence, actual/factual innocence, and ineffective assistance of counsel during the plea-bargaining process and for failing to move to quash the bill of information.    After the State filed a response and Dussett filed a traverse, the state trial court denied the application for post-conviction relief on March 26, 2015.[9]    The Fifth Circuit denied Dussett's related writ application on June 1, 2015.[10]    On June 17, 2016, the Louisiana Supreme Court denied Dussett's petition for writ of certiorari.[11]

On July 6, 2016, Dussett filed the instant application for *habeas corpus* relief.[12]    In that application, Dussett claims he was denied effective assistance of appellate counsel for (1) filing an inappropriate *Anders* brief, (2) failing to assign as error the sufficiency of the evidence, (3) failing to assign as error the trial court's ruling allowing the prosecution to present evidence that Dussett and Trim were suspects in Williams' murder, (4) failure to assign as error the trial court's denial of a mistrial, and (5) failure to obtain transcripts of

---

[8]    State Rec., Vol. 2 of 12, Petition for Leave to Amend and Supplement PCR Application, 9/15/14; Amended and Supplemented Brief, 9/15/14.

[9]    State Rec., Vol. 2 of 12, State District Court Order denying post-conviction relief, 3/27/15.

[10]    State Rec., Vol. 2 of 12, *Dussett v. Cain*, 15-KH-283 (La. App. 5 Cir. 6/15) (unpublished).

[11]    *State ex rel. Dussett v. State*, 194 So. 3d 599 (La. 6/17/16) (Mem.) (per curiam).    State Rec., Vol. 2 of 12.

[12]    Rec. Doc. No. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus, certified July 6, 2016.

opening statements, closing arguments, voir dire proceedings, and the jury charge. He claims he was denied effective assistance of trial counsel for failure to (6) examine telephone recordings from the jail which would have revealed a conversation between Dussett and the victim during which the victim acknowledged that Dussett did not shoot at him, (7) advise of a favorable plea offer and in advising him to reject the offer,[13] and (8) move to quash the information or move for a mistrial and file for writs based on the introduction of evidence relating to Frankie Williams' murder. Dussett also claims the bill of information was defective in that it failed to advise him of the nature and cause of the accusation and that he is actually/factually innocent.

The State concedes that Dussett's petition is not successive and that the federal application is timely. The State argues that the defective information claim is procedurally defaulted. It argues that Dussett's claims of ineffective assistance of counsel for failing to obtain a transcript of voir dire proceedings and advising him to reject the plea offer are not exhausted. It contends that the other claims should be dismissed on the merits.[14] Dussett filed a reply in opposition to the State's response.[15]

## FACTS

The following facts were established at trial and summarized on direct appeal by the Louisiana Fifth Circuit Court of Appeal:

---

[13] In his brief, while Dussett argues his counsel failed to advise him of a 10-year plea offer, he also contends "his trial attorney failed to provide effective assistance of counsel when she failed to fully explain a plea offer of 10 years made by the State." Rec. Doc. 3, p. 27.

[14] Rec. Doc. 15.

[15] Rec. Doc. 16. While Dussett reiterates in his reply that he was unaware of the plea offer until his sentencing, he also states that his counsel advised him to reject the plea offer. *Id.*, at p. 18.

During the evening of October 18, 2008, Officer Brad Boyd of the Kenner Police Department responded to reports of gunfire in the 3100 block of Helena Street in Kenner.    When he arrived, Officer Boyd discovered a deceased black male, later identified as Frankie Williams.    Detective George Hoffmann of the Kenner Police Department, the lead investigator of the Williams murder, conducted an interview with Conway Dennis concerning the Williams murder. Mr. Dennis told Detective Hoffmann that he observed defendant and Mr. Trim in the area prior to the murder.[2]    At trial of the instant matter, Mr. Dennis testified that he was with Frankie Williams, his cousin, moments before he was shot. He stated that he left Frankie to go to the store, and as he walked away, he saw defendant, Mr. Trim, and two other individuals walking in Frankie's direction.    On his way back from the store, Mr. Dennis learned that Frankie had been shot.    At trial, surveillance footage from an apartment complex near the murder scene was played.    The video was time stamped at 11:13 p.m. on October 18, 2008, and Mr. Dennis identified defendant and Mr. Trim in the footage.

> 2 On cross-examination, Detective Hoffmann acknowledged that his report does not indicate that defendants were on the murder scene.

Approximately one month later, on November 20, 2008, around 8:00 p.m., Mr. Dennis was on his bike on his way to meet a friend when he encountered a man named Tyson on Clemson Drive, about a mile from the Frankie Williams murder scene on Helena Street. Tyson, who had known Mr. Dennis since he was younger, told him, "I think it's about time for you to leave—leave from around here."    Mr. Dennis got on his bike and started to leave when he noticed defendant and Mr. Trim approaching him.    As he attempted to elude them, both defendant and Mr. Trim, each with a gun, started shooting at him. Mr. Dennis escaped without physical injuries and reported the incident to the police soon after he got home.

Later that evening, Officer Boyd responded to a report of gunfire in the 200 block of Clemson Drive.    When Officer Boyd arrived on the scene, he located eleven spent 9–mm shell casings.    A witness on the scene advised Officer Boyd that he had observed two black males running from the scene firing weapons at somebody else who was running ahead of them.

Mr. Dennis identified defendant and Mr. Trim as his assailants. Defendant was subsequently arrested and denied any knowledge of Frankie Williams' murder or the attempted murder of Mr. Dennis.    At trial, Mr. Dennis stated that he was one hundred percent sure that defendant shot at him on November 20, 2008.[16]

---

16  State Rec., Vol. 1 of 12, *State v. Dussett*, 2012-KA-356 (La. App. 5 Cir. 12/18/12),106 So. 3d 1203, 1206.

**Preliminary Review – Exhaustion and Procedural Default**

A petitioner normally must first exhaust his remedies in the state courts before seeking *habeas corpus* relief from the federal courts.    28 U.S.C. § 2254(b)(1)(A); *see also Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)).    "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."    *Whitehead*, 157 F.3d at 387.

A petitioner properly exhausts state remedies only by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.    *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) (requiring state prisoners, in order to fully exhaust their claims, "to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State").    "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."    *Id.* at 845.

Furthermore, a petitioner's federal claim must have been "fairly presented" at each level of the state-court system.    *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).    "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."    *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)).    "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."    *Whitehead*, 157 F.3d at 387 (citing *Nobles v. Johnson*, 127 F.3d 409, 420 (5th

Cir. 1997)).    Nor is the fair-presentation standard satisfied if the state court must read beyond the petition or brief, for instance to a lower-court opinion, to identify the claim. *Baldwin*, 541 U.S. at 32.

I.    *Failure to Exhaust*

It is unclear whether Dussett is attempting to assert an alternative claim that his counsel provided ineffective assistance in advising him to reject the 10-year plea offer or a claim that his counsel was ineffective in failing to secure a transcript of voir dire proceedings. Assuming that he makes such claims, as the State correctly notes, he did not fairly present them to the state courts.

While, in his application for post-conviction relief, Dussett initially framed his claim of ineffective assistance of appellate counsel relating to the failure to obtain transcripts as including the failure to obtain voir dire proceedings, his arguments only referred to opening statements, closing arguments and the jury charge.[17]    His arguments before the Fifth Circuit and the Louisiana Supreme Court were similarly limited.[18]

The record also shows that Dussett also did not fairly present a claim to the Fifth Circuit or the Louisiana Supreme Court that his counsel was ineffective for advising him to reject the plea offer.    Although he designated the claim individually and set out the factual basis for the claim in his supplemental brief in support of his application for post-conviction

---

[17]    State Rec., Vol. 1 of 12, Uniform Application for Post-Conviction Relief, pp. 6, 20-21, (dated 8/14/14).

[18]    State Rec., Vol. 8 of 12, 5th Circuit Writ Application, 15-KH-283, pp. 21-22, 5/5/15 (dated 4/24/15); Vol. 9 of 12, La. Supreme Court Writ Application, 15-KH-1332, pp. 17-18, 7/7/15 (dated 6/29/15).

relief filed with the state district court, he failed to do so in his subsequent related writ applications to the Louisiana Fifth Circuit and the Louisiana Supreme Court.[19]

As the State notes in its response, Dussett's failure to exhaust these claims in state court presents an additional problem and basis for dismissal of his federal *habeas* claim, *i.e.*, a procedural bar in federal court.   If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court and must be dismissed.   *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).

The record in this case reflects that Dussett is now unable to litigate his unexhausted claims in the Louisiana courts.   The Louisiana Supreme Court already has advised Dussett that he no longer has available post-conviction remedies:

> Relator has now fully litigated his application for post-conviction relief in state court.   Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8.   Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory.   Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review.   The District Court is ordered to record a minute entry consistent with this per curiam.

---

[19]   State Rec., Vol. 8 of 12, 5th Circuit Writ Application, 15-KH-283, pp. 24-26, 5/5/15 (dated 4/24/15); Vol. 9 of 11, La. Supreme Court Writ Application, pp. 20-22, 7/7/15 (dated 6/29/15).

*State ex rel. Dussett v. Dussett*, 2015-KH-1332 (La. 6/17/16), 194 So. 3d 599; State Rec., Vol. 2 of 12.

Dussett, therefore, no longer has the opportunity to present his unexhausted claims in the state courts.    A *habeas* petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion, because there are no state remedies any longer "available" to him.    *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996); *see* 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (citing *Engle v. Isaac*, 456 U.S. 107, 125-126, n.28 (1982)).    The United States Supreme Court has determined that the exhaustion requirement "'refers only to remedies still available at the time of the federal petition,' [and] it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" (emphasis added, citations omitted) *Gray*, 518 U.S. at 161-62 (quoting *Engle*, 456 U.S. at 125 n.28, and *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

As the state court review of Dussett's unexhausted claims must be deemed technically exhausted, the claims must be evaluated for procedural default.    *See Gray*, 518 U.S. at 162 ("... the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim ..."); *Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas...").

The procedural bar created by a petitioner's created technical exhaustion stands as an adequate and independent state procedural ground and prevents federal *habeas corpus*

review of a defaulted claim.    *Gray*, 518 U.S. at 162; *see also*, *Coleman*, 501 U.S. at 735 n.1;

*Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).    In the interest of judicial economy,

the Court will address the procedural bar to these and Dussett's other defaulted claim in the

following section of this report.

 II.    *Procedural Default*

 In addition to the unexhausted claims, the state courts imposed a procedural bar to

review of one of Dussett's other claims.    Specifically, in his ninth federal *habeas* claim,

Dussett asserts that the bill of information failed to provide him with adequate notice of the

nature and cause of the accusation.    He claims that the bill of information failed to allege

the motive or the elements of the crime.

 Dussett raised this claim in his amended and supplemented brief in support of his

application for post-conviction relief. [20]    The district court found the claim to be

procedurally barred from post-conviction review under Louisiana Code of Criminal

Procedure article 930.4(B).[21]    The Louisiana Fifth Circuit and the Louisiana Supreme Court

denied Dussett's related writ applications.    *See Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111

S.Ct. 2590, 115 L.Ed.2d 706 (1991) (when the last state-court judgment does not indicate

whether it is based on procedural default or the merits of a federal claim, the federal court

will presume that the state court has relied upon the same grounds as the last reasoned state

court opinion).

---

 [20]   State Rec., Vol. 2 of 12, Amended and Supplemented Brief in Support of Application for Post Conviction Relief, 9/15/14 (dated 9/9/14).

 [21]   State Rec., Vol. 2   of 12, State Court Order, p. 6, 3/27/15.

A.  Independent and Adequate

The Court must consider whether the bar to review relied upon by the Louisiana courts prohibits consideration of Dussett's ninth claim on federal *habeas corpus* review. For a state-imposed procedural bar to prevent review by this federal *habeas* court, the bar must be both independent and adequate.    Article 930.4(B), which prohibits review of a claim that was known and inexcusably not raised in the proceedings leading to the conviction, qualifies as both an independent and adequate procedural rule to support a procedural bar in federal court.

Federal courts have repeatedly found that Louisiana Code of Criminal Procedure article 930.4(B) is a well-established and independent state-law procedural ground regularly applied by the state courts to deny review of improperly raised post-conviction claims.    *See Basco v. Goodwin*, Civ. Action No. 12-2006, 2013 WL 1628375, at *10 (E.D. La. Mar. 14, 2013) (finding Article 930.4(B) and (C) independent and adequate for denying review of an improperly raised post-conviction claim); *Thomas v. Cain*, No. 11-2103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (finding Article 930.4(B) independent and adequate to bar claim challenging expert witness testimony); *Simmons v. Cain*, No. 06–2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (finding Article 930.4(B) and (C) independent and adequate to bar trial errors raised on post-conviction that were not raised at trial or on appeal); *Monroe v. Cain*, No. 05–0929, 2006 WL 5507856, at *8 (E.D. La. Oct.17, 2006) (finding Article 930.4(B) and (C) independent and adequate to bar prosecutorial misconduct claims and others not raised at trial or on appeal), *adopted as modified on other grounds by Monroe v. Cain*, No. 05–0929, 2008 WL 818968, at *1 (E.D. La. Mar.24, 2008) (Berrigan, J.).    Here, the state court's ruling was based on Louisiana law

setting forth the requirements for preservation and presentation of claims on post-conviction review. The ruling was independent of federal law and it relied strictly on state procedural requirements.

Furthermore, it qualifies as an "adequate" procedural ground because the state rule is "firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)); *see also Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997) (to be considered "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases). State procedural rules enjoy a presumption of adequacy when the state court expressly relies upon them in deciding not to review a claim, and the burden is on the petitioner to demonstrate otherwise. *Glover*, 128 F.3d at 902; *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir.1999). As previously discussed, the state district court expressly relied on well-settled Louisiana law arising from Louisiana Code of Criminal Procedure article 930.4(B) to bar review of Dussett's ninth claim. The bar imposed on Dussett's claim is supported by the record and adequate to foreclose review by this federal court.

### B.  Cause and Prejudice

To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). In this case, Dussett has not offered any cause for his failure to exhaust or present his claims in a timely and proper manner to the state courts. The Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claims in a procedurally proper manner. Nor does the record reflect any action or inaction on the part of the State which

prevented him from doing so.   Dussett has not established cause for his default, and, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."   *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

### C.   Fundamental Miscarriage of Justice

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.   *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).   To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."   *Kuhlmann v. Wils*on, 477 U.S. 436, 454 (1986); *accord Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Glover*, 128 F.3d at 902.   To satisfy this standard, a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."   *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).   When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.   *Glover*, 128 F.3d at 903.

In this case, Dussett failed to offer any basis for the court to consider his defaulted claims and has not made a colorable showing of actual innocence.   Dussett arguably contends factual innocence by challenging the sufficiency of the evidence presented at trial. None of Dussett's arguments establish or raise doubt about his guilt that were not already considered by the jury.   He has pointed to no evidence that would show his actual innocence of the crime for which he was convicted.   Dussett has failed to overcome the

procedural bar to his claims, and the foregoing claims should be dismissed with prejudice as procedurally barred.

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.    The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United

States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

### Analysis of Claims for Relief

*I. Ineffective Assistance of Counsel*

Dussett asserts multiple claims involving ineffective assistance of counsel, which he raised in the state courts on post-conviction relief. He claims that his appellate counsel

was constitutionally ineffective for filing what constituted an inappropriate *Anders* brief and for failing to challenge (1) the sufficiency of the evidence, (2) the trial court's ruling allowing the State to represent evidence that Dussett and Trim were suspects in the murder of Frank Williams, and (3) the trial court's denial of a mistrial, and for failing obtain transcripts of opening statements, closing arguments, and the jury charge.    He claims his trial counsel was constitutionally ineffective for failing to examine a jail telephone recording which would have demonstrated that the victim acknowledged Dussett did not shoot at him, advise of a plea offer, and move to quash information or move for a mistrial and seek writs relating to the introduction of evidence relating to the Williams' murder.

The state district court denied relief in an extensive opinion.    In the last reasoned opinion, the Louisiana Supreme Court found, "Relator fails to show that he received ineffective assistance of trial counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052. 80 L.Ed.2d 674 (1984)," and attached the district court's written reasons for denying relief.[22]

The standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).    In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.    *See* 466 U.S. at 697.    The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.    *See Montoya v. John*son, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).    In deciding ineffective-assistance

---

[22] *State ex rel. Dussett v. State,* 2015-KH-1332 (La. 2016) (per curiam), 194 So. 3d 599.    State Rec., Vol. 2 of 12.

claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88; *see also Cantu v. Thaler*, 632 F.3d 157, 163 (5th Cir. 2011). The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must " 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Dussett must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189

(2011) (quoting *Strickland*, 466 U.S. at. 694).    This standard requires a "substantial," not just "conceivable," likelihood of a different result.    *Harringto*n, 562 U.S. at 112.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."    *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).    Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal *habeas* relief.    *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

On *habeas* review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."    *Harrington*, 562 U.S at 105.    The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.    The *Strickland* standard is a general one, so the range of reasonable applications is substantial.    Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).    When § 2254(d) applies, the question is not whether counsel's actions were reasonable.    The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations and quotation marks omitted).

Accordingly, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."    *Cullen*, 563 U.S. 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)).    The federal courts must look at counsel's performance under the Strickland

standard through the "deferential lens of § 2254(d)."   *Id.* (citing *Strickland*, 466 U.S. at 689

and quoting *Knowles*, 129 S.Ct. at 1419 n. 2).   Furthermore, the court will "indulge a strong

presumption that strategic or tactical decisions made after an adequate investigation fall

within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*,

194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689–90); *see also Matheson*

*v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

The *Strickland* standard also applies to claims of ineffective assistance of appellate

counsel.   *Duhmel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992) (citing *Heath v. Jones*, 941 F.2d

1126, 1130 (11th Cir. 1991)).   In reviewing claims of ineffective assistance of appellate

counsel, the Supreme Court has expressly observed that appellate counsel "need not advance

every argument, regardless of merit, urged by the [ ] defendant."   *Evitts v. Lucey*, 469 U.S.

387, 394 (1985).   When alleging ineffective assistance of appellate counsel, the defendant

"must show that the neglected claim would have had a reasonable probability of success on

appeal."   *Duhmel*, 955 F.2d at 967.   However, failing to raise every meritorious claim on

appeal does not make counsel deficient.   *Green v. Johns*on, 116 F.3d 1115, 1125-26 (5th Cir.

1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989)).   Similarly, failing to raise

a frivolous claim "does not cause counsel's performance to fall below an objective level of

reasonableness."   *Id.* at 1037.   Courts give great deference to professional appellate

strategy and applaud counsel for "winnowing out weaker arguments on appeal and focusing

on one central issue if possible, and at most a few key issues...."   *Jones v. Barnes*, 463 U.S.

745 (1983).   This is true even where the weaker arguments have merit.   *Id.* at 751–2.

Instead, the applicable test is whether the omitted issue was "clearly stronger" than the

issue[s] actually presented on appeal.   *See, e.g., Diaz v. Quarterman*, 228 F. App'x 417, 427

(5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Because the state courts rejected Dussett's ineffective-assistance-of-counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt."   *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

A.   Ineffective Assistance of Appellate Counsel for Filing Inappropriate *Anders* Brief

In his first claim, Dussett claims his appellate counsel was ineffective for filing, in essence, an inappropriate *Anders* brief.   Dussett acknowledges his appellate counsel did not actually file an *Anders* brief and in fact raised issues on appeal.   He essentially argues that his appellate counsel should have raised other claims on appeal.

Dussett raised this same claim in his state post-conviction application and, in the last reasoned state-court opinion, the Louisiana Supreme Court denied the claim on its merits.[23] The Louisiana Supreme Court explicitly relied upon the post-conviction findings of the state district court that:

> The court finds no merit to petitioner's claim of ineffective assistance of appellate counsel.   Appellate counsel is limited to the record and is ethically bound to raise only issues supported by the law and the evidence.
>
> The court finds no merit to this claim, as petitioner fails to prove that

---

[23]  *Id.*

appellate counsel, Frederick Kroenke, Jr., was deficient, or that any prejudice resulted.     Petitioner fails to establish that the appellate court would have granted relief."[24]

Dussett's appellate counsel filed a brief raising two claims: (1) the trial court imposed a constitutionally excessive sentence and (2) the failure of trial counsel to file a motion to reconsider the sentence should not preclude the constitutionality of the sentence, and if it did, such failure constituted ineffective assistance of counsel.     Dussett claims these arguments were weak and that appellate counsel should have raised other issues on appeal relating to the sufficiency of the evidence, the admission of evidence relating to Williams' murder, and the trial court's denial of motions for mistrial.

It is clear that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."     *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996).     "Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions."     *Jones,* 463 U.S. at 753.     To reiterate, the issues appellate counsel failed to assign must have been "clearly stronger" than those issues actually presented on appeal. *See, e.g., Diaz*, 228 F. App'x at 427; *see also Smith*, 528 U.S. at288.

As explained later in this opinion, the claims Dussett contends his appellate counsel should have raised have no merit, so by definition they cannot be said to be "clearly stronger" than the claims counsel raised on appeal.     The Court ultimately finds that Dussett has not shown prejudice from any arguable deficiency in his appellate counsel's performance, and

---

[24]   State Rec., Vol. 2 of 12, State Court Order, p. 2, 3/27/15.

that this claim of ineffective assistance of appellate counsel must therefore fail.

It is clear that Dussett has not demonstrated that the state court's decision rejecting this ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    Accordingly, employing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

B.    Ineffective Assistance of Appellate Counsel for Failing to Challenge the Sufficiency of the Evidence

Dussett asserts his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal.    He claims there was insufficient evidence to prove that the shooting was intended to prevent the victim from testifying in a criminal action or proceeding.    He further claims that there was insufficient evidence to find probable cause to charge him or Trim with the murder of Williams, and, as such, there is no reason believe that Dussett attempted to kill the victim to prevent his testimony.    The State responds that the claim is conclusory in nature and refuted by the findings in his co-defendant's appeal.

Dussett cannot establish error or prejudice in his appellate counsel's failure to challenge the sufficiency of the trial evidence.    Indeed, this Court presumes that appellate counsel exercised his professional judgment to raise the issues on appeal that he considered to be the most meritorious.    In evaluating sufficiency of the evidence to support conviction, the state appellate court asks, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.    *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588,

594 (5th Cir. 2008); *State v. Tate*, 2001–KA–1658 (La. 5/20/03), 851 So. 2d 921; *State v. Cummings*, 95-K-1377 (La. 2/28/96), 668 So. 2d 1132; La. Code Crim. P. art. 821.

The record demonstrates that there was more than sufficient evidence to support Dussett's conviction, and any such argument appellate counsel might have made in this regard would have been rejected.    As the state district court explained in rejecting the claim of ineffective assistance of appellate counsel on collateral review, the sufficiency claim would not have succeeded:

> The state points to the detailed findings of fact, established at the same trial, in his co-defendant's appeal, where in the Fifth Circuit outlined the facts against co-defendant Devion Trim and found the evidence sufficient to convict. *State v. Trim*, 12-115 (La. App. 5th 10/16/12), 107 So.3d 656, 660-661.    The court finds this persuasive.
>
> Where the victim testified at trial that the petitioner shot him, the petitioner cannot establish that the evidence was insufficient to convict or that his appeal would have been successful if that issue had been raised.    This claim fails.[25]

As the state court observed, the Louisiana Fifth Circuit on direct appeal addressed the strength of the evidence when it considered the claim made by co-defendant Trim in his separate appeal.    The Fifth Circuit found as follows:

> The constitutional standard for testing the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.    *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).    Under this standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.    *State v. Jones*, 08–20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240.    Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt.    *Id.*

---

[25] *Id.*, at p. 3.

"Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts."    *State v. Kempton*, 01–572, p. 7 (La. App. 5 Cir. 12/12/01), 806 So.2d 718, 722.    "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA–R.S. 15:438.    However, this requirement does not establish a standard that is separate from the *Jackson* standard, but instead provides a helpful methodology for determining the existence of reasonable doubt.    *State v. Lathers*, 03–941 (La. App. 5 Cir. 2/23/04), 868 So.2d 881, 884.    To support the conclusion that the defendant is guilty beyond a reasonable doubt, all evidence, both direct and circumstantial, must be sufficient.    *Id.* (citation omitted).

When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.    *State v. Bailey*, 04–85 (La. App. 5 Cir. 5/26/04), 875 So.2d 949, 955, *writ denied*, 04–1605 (La. 11/15/04), 887 So.2d 476, *cert. denied*, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005).    In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to convict.    *State v. Addison*, 00–1730, p. 4 (La. App. 5 Cir. 5/16/01), 788 So.2d 608, 613, *writ denied*, 01–1660 (La. 4/26/02), 814 So.2d 549.    Further, it is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence absent impingement on the fundamental due process of law.    *Bailey, supra*.

Defendant was convicted of the attempted first degree murder of Conway Dennis.    According to LSA–R.S. 14:30(A)(9)(a), first degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a victim who was a witness to a crime or was a member of the immediate family of a witness to a crime committed on a prior occasion and the killing was committed for the purpose of preventing or influencing the victim's testimony in any criminal action or proceeding whether or not such action or proceeding had been commenced.    LSA–R.S. 14:30(B)(3) defines a "witness" as "any person who has testified or is expected to testify for the prosecution, or who, by reason of having relevant information, is subject to call or likely to be called as a witness for the prosecution, whether or not any action or proceeding has yet commenced."

The crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal.    *State v. Girod*, 94–853, pp. 5–6 (La. App. 5 Cir. 3/15/95), 653 So.2d 664, 668.    Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to

act." LSA–R.S. 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. *Girod, supra*.

Specific intent to kill can be inferred from the intentional use of a deadly weapon such as a knife or a gun. *State v. Knight*, 09–359, p. 14 (La. App. 5 Cir. 2/9/10), 34 So.3d 307, 317, *writ denied*, 10–2444 (La. 10/21/11), 73 So.3d 376. "The act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill." *State v. Gonzalez*, 07–449, p. 9 (La. App. 5 Cir. 12/27/07), 975 So.2d 3, 8, *writ denied*, 08–0228 (La. 9/19/08), 992 So.2d 949. Whether a defendant possessed the requisite intent in a criminal case is a question for the trier-of-fact, and a review of the correctness of this determination is guided by the *Jackson* standard. *Id*.

At trial the State presented evidence regarding the murder of Frankie Williams to establish that defendant's intent and motive to kill Dennis was to prevent him from testifying about the murder. The State and defense offered a joint stipulation that Williams' death was classified as a homicide due to a gunshot wound to the back of the head. Dennis testified that shortly before the murder he observed defendant and Dussett walking toward the playground where Williams was shot. Dennis further stated that Williams, his cousin, indicated that he had obtained a gun from Louis Cox to rob Antonio Robinson aka "Big Tony," who was Dussett's cousin, which presented a motive for the murder. Dennis, the victim, also identified defendant and Dussett in a surveillance video taken approximately 15 minutes before the murder. Dennis testified that although he was nervous, he spoke with police at Williams' mother's home a few days after the murder. Defendant and Dussett were developed as suspects in the Williams murder based on Dennis' initial statement to police. However, no formal charges were ever filed.

The following evidence was presented by the State in an effort to establish that defendant, along with Dussett, actually attempted to kill Dennis. Detective Adams testified that in his statement, Dennis asserted that he believed defendant and Dussett were "after him" because they were persons of interest in the Williams murder. Dennis testified that, subsequent to the murder of Williams, defendant and Dussett both shot at him with firearms and that 11 shell casings from a 9 mm firearm were recovered from the scene. Dennis further declared that the only people who would want to kill him were the people affiliated with Williams' murder, and after Williams was murdered, he knew they were going to try to kill him.

We find sufficient evidence to establish that Dennis was subject to being called as a witness in a future proceeding by reason of having relevant information regarding the murder of Frankie Williams, and that defendant fired at him with the specific intent to kill him to prevent him from ever testifying.

Notably, defendant does not allege that the specific elements of the crime were not proven; rather he contends that the victim's testimony should have been discredited.

In an effort to discredit Dennis, the defense offered the testimony of Phillip Dussett, Sr., the co-defendant's father.    Dussett, Sr. testified that he was friends with Conway Dennis, Sr., the victim's father.    Dussett, Sr. further testified that Dennis, Sr. came to his home and apprised him of the situation between their sons, and put him in touch with Dennis.    Dussett, Sr. testified that he and his son spoke with Dennis on the phone using three-way calling. Dussett, Sr. claimed that Dennis attempted to extort money in exchange for dropping the attempted murder charges; however, Dussett, Sr. refused and did not have access to that kind of money.    Dussett, Sr. further testified that Dennis said: "[Y]ou may not have nothing [sic] to do with this, but I know you're capable of it because we used to hang together."

Dennis confirmed in his testimony that he spoke with the Dussetts; however, he denied ever asking for money and explained that Dussett, Sr. offered him money not to testify.    Moreover, he identified defendant and Dussett as the shooters shortly after the shooting took place, explaining that he knew them from the neighborhood.    The eleven shell casings found at the scene and the 911 calls, which indicated that two people were running and shooting at a third individual who was farther ahead of them, also corroborate Dennis' version of events.    Interestingly, defendants' statements about when they last saw each other contradicted one another, calling their credibility into question.

It was within the jury's purview to believe Dennis' version of events. Accordingly, we find that in the light most favorable to the State there was sufficient evidence to convict defendant of the attempted first degree murder of Conway Dennis.

*State v. Trim*, 12-115 (La. App. 5 Cir. 10/16/12), 107 So.3d 6 656, 659-61.

Dussett presents nothing that might persuade this Court that the Louisiana Fifth Circuit would have reached a different conclusion had his appellate counsel raised his own sufficiency-of-the-evidence claim.    Given the fact that an appellant challenging the sufficiency of the evidence supporting his conviction faces a very high bar under Louisiana law, appellate counsel obviously had good reason to omit a challenge to the sufficiency of the evidence.    *See State v. Mire*, 2014-2295, 2016 WL 314814 (La. 2016); *State v. Tate*, 01-1657,

(La. 5/20/03), 851 So.2d 921; *State v. Turner*, No. 50,221, 2016 WL 231740, at * 2-3 (La. App. 2 Cir. 2016).    Even if Dussett's appellate counsel had raised an argument regarding the sufficiency of the evidence at trial, any such argument would have been denied on appeal. Failure to raise a meritless claim on appeal is not deficient performance.    *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit.    As such, failure to raise these issues did not prejudice Anderson."); *see also*, *Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's premise that only when ignored claims are stronger than those raised will the presumption of effectiveness be overcome) (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Consequently, Dussett has failed to demonstrate that the state court's decision rejecting this ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    He is not entitled to relief on this claim.

> C.    Ineffective Assistance of Appellate Counsel for Failing to Challenge Trial Court's Ruling Allowing the State to Elicit Testimony that Dussett and Trim Were Suspects in the Frankie Williams' Murder

Dussett next claims that his appellate counsel was ineffective for failing to challenge on appeal the trial court's ruling allowing the prosecution to present evidence that Dussett and Trim were suspects in Williams' murder.    He claims that had his appellate counsel raised the issue, there is a reasonable probability that his conviction would have been overturned.    The State responds that Dussett cannot demonstrate prejudice as a result of his counsel's failure to raise the issue because co-defendant Trim raised the issue regarding the admission of the evidence on appeal and the Fifth Circuit rejected the claim.

Dussett raised this claim in his application for post-conviction relief.   The Louisiana Supreme Court denied the claim in the last reasoned state-court opinion.   The court attached and incorporated the district court's written ruling in its opinion.   In relevant part, that opinion stated:

> This court notes, as did the Fifth Circuit, that the charge and trial were based upon the information that Conway Dennis, the victim, had accused the petitioner of murdering Frankie Williams.   As the state points out, this precise issue was reviewed in the appeal of co-defendant Trim.

> After a comprehensive review on this issue in the co-defendant's case, the Court of Appeal denied this claim.   *State v. Trim*, 107 So.3d at 661.   In doing so, the Court found that "this evidence was highly relevant and probative, because the State had to show that defendant was observed at the scene and was somehow connected to the Williams murder in order to prove that his attempt to kill Dennis was to prevent him from testifying about his knowledge of the murder in the future."   *Id*. at 656.

> After a careful review of this contention, this court finds that the petitioner has not shown either prejudice or deficient performance by appellate counsel.   He is not entitled to relief on this claim.[26]

Dussett cannot meet his burden to establish that, had the issue been raised, the appellate court likely would have granted relief.   Trial counsel filed a motion in limine seeking to prohibit the prosecution from introducing evidence that Dussett and Trim were suspects in the murder of Frankie Williams.[27]   After a hearing on the matter, the trial court denied the motion but allowed the defendants to make appropriate objections as to admissibility, relevance and hearsay.[28]   As recognized by the state district court, appellate counsel for co-defendant Trim assigned the admissibility of the evidence relating to

---

[26]   *Id.*, at p. 4.

[27]   State Rec., Vol. 1 of 12, Motion in Limine, 6/15/11; Supplemental Motion in Limine, 6/16/11.

[28]   State Rec., Vol. 1 of 12, Minute Entry, 6/20/11; Minute Entry, 6/21/11; Vol. 4 of 12, Transcript, 6/20/11; Minute Entry 6/21/11; Vol. 5 of 12, Transcript, 6/21/11.

Williams' murder as an issue on appeal.    The Fifth Circuit found no error in admitting the

evidence reasoning:

> With respect to the argument that the trial court erred in admitting other
> crimes evidence concerning defendant's involvement in the murder of
> Williams, he challenges both the admissibility of the testimonial evidence of
> the Williams murder and the videotape placing him at the scene of the murder
> shortly before it occurred.    He argues that this evidence was based on
> hearsay[6] and innuendo, it was not tested against the clear and convincing
> standard set forth in *Prieur*, and the State introduced it only to portray him as
> a person of criminal character.

> > [6] It is noted that defense counsel did not make any hearsay objections to the testimony at trial.

> Relevant evidence is evidence having any tendency to make the existence of
> any fact that is of consequence to the determination of the action more
> probable or less probable than it would be without the evidence.    LSA–C.E.
> art. 401.    All relevant evidence is admissible except as otherwise provided
> by positive law.    Evidence which is not relevant is not admissible. LSA–C.E.
> art. 402.    Although relevant, evidence may be excluded if its probative value
> is substantially outweighed by the danger of unfair prejudice, confusion of the
> issues, misleading the jury, or by considerations of undue delay, or waste of
> time.    LSA–C.E. art. 403.

> The fundamental rule in Louisiana governing the use of evidence of other
> crimes, wrongs, or acts is that such evidence is not admissible to prove that
> the accused committed the charged crime because he has committed other
> such crimes in the past.    *See State v. Hatcher*, 372 So.2d 1024, 1036 (La.
> 1979) (Tate, J., concurring on rehearing).

> La. C.E. art. 404(B)(1) provides:

> > Except as provided in Article 412, evidence of other crimes,
> > wrongs, or acts is not admissible to prove the character of a
> > person in order to show that he acted in conformity therewith.
> > It may, however, be admissible for other purposes, such as proof
> > of motive, opportunity, intent, preparation, plan, knowledge,
> > identity, absence of mistake or accident, provided that upon
> > request by the accused, the prosecution in a criminal case shall
> > provide reasonable notice in advance of trial, of the nature of
> > any such evidence it intends to introduce at trial for such
> > purposes, or when it relates to conduct that constitutes an
> > integral part of the act or transaction that is the subject of the
> > present proceeding.

Other circuits have found that "the prohibition against other crimes evidence pertains to other crimes by the defendant, not other crimes by someone else." *State v. Grant*, 41,745, pp. 16–17 (La. App. 2 Cir. 4/4/07), 954 So.2d 823, 836, *writ denied*, 07–1193 (La.12/7/07), 969 So.2d 629, (citing *State v. Buffington*, 97–2423 (La. App. 4 Cir. 2/17/99), 731 So.2d 340).    Rulings on the admissibility of evidence will not be disturbed, absent an abuse of discretion. *State v. Olivieri*, 03–563, p. 19 (La. App. 5 Cir. 10/28/03), 860 So.2d 207, 218.

Here the trial court denied defendant's motion in limine finding that he was given ample notice that he was a suspect in the Williams murder.    The trial court also stated that it would "allow the defendants to make the appropriate objections as to admissibility, relevance, hearsay, et cetera."    At trial, the State presented evidence that defendant and Dussett were suspects in the Williams murder and that defendant was observed walking towards Williams and the playground where he was murdered.    However there were no eyewitnesses to the crime.    The State never presented evidence which indicated that defendant or Dussett actually committed the murder of Williams.    Likewise, it presented evidence that Lewis Cox and Antonio Robinson were also suspects in the open investigation and that no one was ever charged with the murder, making it plausible that Louis Cox[7] or Antonio Robinson murdered Williams and defendant and Dussett attempted to kill Dennis to prevent him from testifying as to that information.    Evidence that defendant was a suspect in the Williams murder does not constitute other crimes evidence of defendant, as the State did not, and was not, attempting to prove that he actually murdered Williams.

[7] Dennis also observed Louis Cox, among others, with defendant and Dussett on the day of the murder.

Additionally, this evidence was highly relevant and probative, because the State had to show that defendant was observed at the scene and was somehow connected to the Williams murder in order to prove that his attempt to kill Dennis was to prevent him from testifying about his knowledge of the murder in the future.    Likewise, the prejudicial effect was minimal when considering the State presented evidence that defendant was never charged and that there were other suspects in the murder.    We find that the trial court did not err in admitting the evidence that defendant was a suspect in the Williams murder.

*Trim*, 12-115 (La. App. 5 10/16/12), 107 So.3d at 664-65.

Dussett has not demonstrated that he suffered any prejudice as a result of the omitted argument on appeal.    While Dussett claims that his appellate counsel should have specifically argued that the probative value of the evidence relating to Williams' murder was

substantially outweighed by its prejudicial effect, regardless of how the claim was asserted or framed, it nonetheless would not have prevailed on direct appeal.    The Fifth Circuit, in finding the trial court did not err in admitting the evidence, determined that the evidence was highly probative and that the prejudicial effect was minimal.    *Id.*, at 665.    Given that Dussett and Trim were convicted in a joint trial, Dussett cannot demonstrate the outcome of his appeal would have been any different if his counsel had advanced this ultimately-rejected claim.

Dussett has not demonstrated that the state court's decision denying his claim was contrary to, or involved an unreasonable application of clearly established federal law, as required by the Supreme Court.    This claim should be denied.

      D.     <u>Ineffective Assistance of Appellate Counsel for Failing to Raise as Errors the Trial Court's Denial of Motions for Mistrial Based on (1) Impermissible Testimony that Associated Dussett with a Gang, (2) Impermissible Testimony Referencing Other Crimes and (3) Impermissible Testimony that Dussett Had Been Shot</u>

Dussett next claims that his appellate counsel was ineffective for failing to assign as error the state district court's denial of motions for a mistrial.    Dussett's trial counsel moved for a mistrial on three separate occasions.    Counsel first moved for a mistrial when Officer Brad Boyd testified that he had conducted stops of Dussett and Trim when they were together.[29]    The trial court allowed the prosecution to clarify that Boyd was speaking of a traffic stop and denied the motion.[30]    Counsel unsuccessfully moved for a mistrial a second time after Detective Jeff Adams testified that Dussett and Trim had been shot at.[31]    Conway

---

[29]   State Rec., Vol. 5 of 12, Trial Transcript, pp. 33-34, 8/2/11.

[30]   *Id.*, at pp. 35, 44.

[31]   *Id.*, at. pp. 119-20.

Dennis' reference to the "Flippa Squad" precipitated counsel's third motion for mistrial.[32]

The Louisiana Supreme Court denied relief, relying on the state district court's findings in denying the claim raised by Dussett in his application for post-conviction relief. The district court explained:

> The petitioner's next challenge relates to a mistrial.   He argues his appellate attorney was deficient by not raising a claim of wrongful denial of a mistrial.
>
> On the issue of reference to a rap gang, the state in response points to the transcript. Conway Dennis testified on direct examination that the defendants were friends with "the lip squad."   (Record Vol. 2, p. 436).   Trial counsel moved for a mistrial, which was denied.   The issue was not raised on appeal.
>
> On the first part of this complaint, as shown by the transcript, the reference was brief and vague.   There was no showing of prejudice and for this reason, appellate counsel had no duty to raise the issue again.
>
> On the second part of this complaint, the petitioner contends a mistrial should have been ordered when a police officer testified that he had spotted the two co-defendants together before.   Testimony was clear that the reference was to a traffic stop and notably, there was no objection made at the time.   This the issue was not preserved for review and appellate counsel was not deficient in not raising it on appeal.
>
> On the third part of this complaint, the petitioner alleges there was an impermissible reference, by a police officer, that he had been shot at.   There was an immediate objection and the court found the officer had "blurted out" the remark.   The trial court did not rule on the defense objection until the entirety of the witness' testimony on direct examination was complete.   The trial court had sufficient information to determine that the defense suffered no prejudice from the isolated reference.
>
> In reviewing this post-conviction claim, the court finds that appellate counsel's strategic decision not to raise this fleeting reference was not ineffective assistance of counsel.[33]

---

[32]  *Id.*, at p. 163.   Dennis' statement was incorrectly transcribed as "lip squad."

[33]  State Rec., Vol. 2 of 12, State Court Order, p. 4, 3/27/1.

Dussett fails to show his counsel rendered deficient performance or any resulting prejudice from the failure to assign as an issue on appeal the denial of the motions for mistrial.    Appellate counsel likely did not assign error on appeal because no error was committed in any of the denials of the motions for mistrial.

Article 770 provides for a mandatory mistrial when a remark or comment is made in the presence of the jury by the judge, district attorney, or a court official and the remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.    La. Code. Crim. P. art. 770.    Generally, article 770 does not apply to state witnesses because they are not "court officials."    *State v. Pierce*, 11–KA–320 (La. App. 5 Cir. 12/29/11), 80 So. 3d 1267, 1271.    However, application of article 770 is triggered when the prosecutor deliberately elicits testimony from a witness that impermissibly references another crime.    *Id*., citing *State v. Lagarde*, 07–123 (La. App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113, *writ denied*, 07–1650 (La. 5/9/08), 980 So.2d 684.

The law regarding discretionary mistrials and admonitions is set forth in La. Code Crim P. art. 771 which provides in pertinent part:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> ...
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
>
> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

Whether to grant a motion for a mistrial, when not mandatory, is a matter of

33

discretion in the state trial court, and the denial of a motion for mistrial will not be reversed on appeal absent an abuse of discretion.    *State v. Paul,* 185 So. 3d 188*,* 202 (La. App. 5th Cir. 2016).    The courts in Louisiana have made clear that a mistrial should be granted "only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial."    *Id.*

With regard to the denial of the first motion for mistrial based on Boyd's statement that he had conducted stops of Dussett and Trim, Dussett's trial counsel did not object when the court denied the motion.[34]    Thus, the matter was not preserved for appeal and appellate counsel would have had no basis to present the issue.    *See* La. Code Crim. P. art. 841 (providing that an irregularity or error cannot be raised on appeal unless an objection was made at the time of the occurrence); *see also State v. Fazande*, 05-KA-901 (La. App. 5 Cir. 3/28/06), 927 So. 2d 507, 512 (finding that because defendant failed to preserve the issue for appeal when defendant did not object to denial of mistrial motion based on judge's improper comments); *State v. Ratcliff*, 98–KA–101 (La. App. 5 Cir. 2/23/99), 731 So. 2d 356, 364 ("Defendant did not object to the trial judge's denial of the motion for mistrial and, therefore, this issue cannot now be complained about.").

Even had the objection to the denial of the first motion for mistrial been preserved, the claim would have lacked merit.    "A witness's voluntary, unresponsive testimony which implicates a defendant in other crimes does not require a mistrial, at least where the form of the prosecutor's question does not indicate bad faith."    *State v. Ledet*, 00-KA-1103 (La. App. 5 Cir. 7/30/01), 792 So.2d 160, 175 (citing *State v. Jackson*, 00-191 (La. App. 5 Cir. 7/25/00),

---

[34]    *See*, State Rec., Vol. 5 of 12, Trial Transcript, p. 44, 8/2/11.

767 So.2d 833.

In the instant case, there was no evidence that the prosecutor was deliberately attempting to elicit testimony of "other crimes" or bad acts when he asked Boyd what he meant by his statement that he knew Dussett and Trim "together."[35]    Boyd gave a non-responsive answer when he stated he had conducted stops of the two.    Boyd then clarified that he was speaking of a traffic stop.    Boyd revealed no details of the stop.    Under the circumstances, it was not unduly prejudicial for the jury to then hear that Dussett, who was on trial for attempted murder, had been involved in a traffic stop.

The second motion for mistrial was prompted by Detective Adams' testimony on re-direct.    The prosecution asked, "In your initial report do you note Devion Trim and Phillip Dussett as suspects in the murder?"[36]    Adams responded, "That was the reason why – yes, because that was the reason why he felt that they were after him because they were persons of interest in the murder and they might have felt that he shot at them because they were shot at --."[37]    When Dussett's counsel objected to Adams' reference to the defendants being shot at, the trial court responded that Adams "just kind of blurted it out."[38]    The court deferred ruling on the motion and the prosecution directed Adams' testimony away from the subject.[39]    After Adams' testimony on re-direct had concluded, the trial court denied the

---

[35]  *Id.*, at p. 33.

[36]  *Id.* at 119.

[37]  *Id.*, at p. 119.

[38]  *Id.*, at p. 121.

[39]  *Id.*

motion.[40]

There is no evidence that the impermissible remark was deliberately obtained by design of the prosecutor to prejudice Dussett's rights.    The prosecutor asked a "yes or no" question.    Adams' response went beyond the scope of the question, which called for a simple affirmative or negative response.    While Adams' response was unsolicited and non-responsive, there is no reason to conclude that the comment was not inadvertent.    No further mention was made of the defendants being shot at.    The brief remark was not so prejudicial that it made it impossible for Dussett to obtain a fair trial, and Dussett cannot establish that the appellate court would have granted relief had appellate counsel raised the issue on appeal.

The third motion for mistrial was based on a statement made by Conway Dennis referencing a gang.    Prior to trial, the trial court had ruled that the prosecution could not introduce YouTube rap videos of Dussett and his gang, "Flippa Squad."    During trial, the prosecution asked Dennis who Dussett and Trim were friends with at the time of the incident, and Dennis responded, "The lip squad.    Everybody familiar with that."[41]    In response to defense counsel's motion for mistrial, the prosecution explained that it had been looking to elicit names of persons.[42]    The trial court denied Dussett's counsel's motion for mistrial and instructed the prosecution to move on.[43]

Here, Dennis' reference to the "Flippa Squad" was vague and brief.    It appears

---

[40]  *Id.*, at p. 121, 125.

[41]  *Id.*, at p. 163.

[42]  *Id.*

[43]  *Id.*

Dennis' statement was not particularly intelligible given it was transcribed "lip squad." Additionally, there was no evidence presented that the "Flippa Squad" was a gang or that Dussett was a member of it.    Nor is there any evidence that members of the jury were familiar with the "Flippa Squad."    Moreover, the prosecution's question was not framed in such a manner to deliberately elicit the response given by Dennis.    Dussett has not shown clear prejudice from the fleeting reference or that Dennis' statement prevented him from receiving a fair trial.    *State v. Tran*, 98 KA 2812 (La. App. 1 Cir. 11/5/99) 743 So. 2d 1275, 1280 (mistrial not warranted where police officer answered "Asian Gang Task Force" in response to the prosecutor's question concerning the "Houston Police Officers," as the response was not deliberately obtained by design of the prosecutor to prejudice the rights of the defendant and there was no indication the defendant was unable to obtain a fair trial as a result of the statement).    For all of these reasons, Dussett has failed to demonstrate that his appellate counsel was ineffective for failing to raise the issue on appeal. Furthermore, Dussett cannot establish that the appellate court likely would have granted relief, had the claim been raised.

Under the doubly deferential standards mandated by the AEDPA, there is no basis for this Court to find that the state court's decision denying Dussett's claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).    Accordingly, this claim should be dismissed.

    E.    <u>Ineffective Assistance of Appellate Counsel for Failure to Obtain Transcripts of Opening Statements, Closing Arguments, and Jury Charges</u>

Dussett next claims that his appellate counsel was ineffective for failing to obtain transcripts of opening statements, closing arguments, and jury charges.    The State

responds that Dussett has not shown that he suffered any prejudice on appeal in the state courts.

The state courts denied relief on this issue when it was raised on post-conviction review.    In denying relief, the Louisiana Supreme Court attached and incorporated the district court's written ruling in which the district court found:

> The petitioner argues his appellate attorney was ineffective because he failed to obtain transcripts from every part of the trial.    This argument is unavailing under the present circumstances because there were no issues in these portions preserved for review.
>
> The petitioner was represented by appellate counsel.    The reviewing panel of judges of the Fifth Circuit was able to review mandatory portions of the trial transcript.    The petitioner's claims that he had some entitlement beyond those portions that is not well founded.    It is well-settled law that:
>
>> Where the record includes a complete transcript of the evidentiary portion of the trial, the appellant's "constitutional right to a judicial review of all evidence" has not been compromised.    *State v. Thomas*, 92-1428 (La. App.4 Cir. 5/26/94), 637 So. 2d 1272, *writ denied*, 94-1725 (La. 11/18/94), 646 So.2d 376, *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1437,131 L.Ed2d 317 (1995).    As to other untranscribed portions of the record, where there were no contemporaneous objections, the errors were not preserved for appeal. *State v. Harrison*, 627 So.2d 231, 233 (La. App. 4 Cir. 12/22/99), 750 So.2d 330, 332.
>
>> *State v. Richards*, 96-0331 (La. App. 4 Cir. 12/22/99), 750 So.2d 330, 332.
>
> The petitioner received a full review of his trial.    His appellate attorney was not constitutionally deficient for failing to order portions of the trial that contained no objections and this afforded no further review.[44]

The law as interpreted by the Supreme Court states that a defendant "has a right to a record on appeal which includes a complete transcript of the proceedings at trial."    *Hardy v. United States*, 375 U.S. 277 (1964).    However, the State is not "obligated to automatically

---

[44]   State Rec., Vol. 2 of 12, State Court Order, p. 4-5, 3/27/15.

supply a complete verbatim transcript," *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir.

1980), and a state need not waste its funds providing for free those parts of the transcript

that are not "germane to consideration of the appeal."     *Draper v. Washington*, 372 U.S. 487,

495 (1963).     Further, it is well settled that the State is not "required to furnish complete

transcripts so that the defendants ... may conduct 'fishing expeditions' to seek out possible

errors at trial."     *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir. 1982).    The law also does not

require a more complete transcript where the petition is completely unable to indicate one

specific error committed during the portions of trial not included in the record.     *Cf., United*

*States v. Renton*, 700 F.2d 154, 159 (5th Cir. 1983).

Here, the record was clearly adequate for the appellate courts to adjudicate the claims

asserted on appeal, in that none of those claims concerned the portions of the proceedings

that were not transcribed.     Obviously, appellate counsel does not perform deficiently, and

no prejudice results, as a result of counsel's failure to order portions of the record that are

irrelevant to the claims asserted.

If Dussett is perhaps arguing that appellate counsel should have asserted additional

claims arising from the portions of the proceedings that were not transcribed, that claim

likewise fails.     Dussett has not shown that any errors occurred during the portions of the

proceedings which were not transcribed.     Even if he could show that such errors occurred

and that nonfrivolous claims could have been asserted based on those errors, that still would

not entitle him to relief.     Because Dussett has not shown that the untranscribed portions of

the proceedings contained any errors, much less errors that could serve as a basis for claims

on appeal that were clearly stronger than the claims asserted, he cannot show that appellate

counsel was ineffective for failing to raise those claims and to provide the portions of the

record necessary to support them.

Accordingly, the state court's rejection of this claim was reasonable and Dussett's claim should be rejected here also.

> F.   Ineffective Assistance of Trial Counsel for Failing to Examine Telephone
> Recordings from the Jefferson Correctional Center Where Counsel Would Have
> Discovered the Victim Acknowledging that Dussett Did Not Shoot Him

Dussett next claims that he told his trial counsel that he and the victim spoke on the phone while Dussett was housed in the Jefferson Correctional Center and that victim acknowledged that Dussett did not shoot at him.   He argues that his counsel failed to investigate and discover the recording which would have contradicted the victim's trial testimony and called his credibility into question.

The claim was raised in his post-conviction application and denied by the state courts. In the ruling by the state district court adopted by the Louisiana Supreme Court, the court concluded:

> The petitioner next argues that this trial attorney, Tracy Sheppard, an experienced criminal attorney, was constitutionally ineffective.   He states she did not investigate and examine telephone recordings, made from the Jefferson Parish jail, which contained the victim's acknowledgement that the petitioner did not shoot him.
>
> Significantly, even in connection with this post-conviction application, no such recording or transcript, has been provided to the court.   By contrast, the record does show that defense called witnesses at trial, including the petitioner's father.   Defense counsel withdrew initial objections to the jury hearing the petitioner's telephone recordings from jail.   Both the petitioner's father and jailhouse conversations contain references to the victim allegedly indicating at some point that he knew the petitioner did not shoot him.
>
> For this reason, the record establishes that trial counsel knew of the factual claim the petitioner is now making.   Counsel's decision on how to present this contention is entitled to great deference under *Strickland*.   In addition, even had such evidence existed and had such been introduced, the evidence would still have been overwhelming.   The petitioner cannot show the results of his trial would have been otherwise or that its result is

unreliable.    The court will deny this claim.[45]

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."    *Strickland*, 466 U.S. at 691. "A particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments."    *Id.*

To satisfy *Strickland*, a petitioner "'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"    *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)); *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998).    The petitioner must provide factual support demonstrating what exculpatory evidence further investigation would have revealed. *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07–6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).    A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result.    *Diaz*, 239 F. App'x at 890 (citing *Strickland*, 466 U.S. at 696).    For these reasons, brief and conclusory allegations that the attorney's representation was deficient because of a failure to investigate and develop useful evidence will not suffice.    *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Dussett cannot show that he was prejudiced by his attorney's failure to investigate or discover the alleged recording because there is no evidence whatsoever that the recording

---

[45]  *Id.*, at p. 5.

even *existed*.    As indicated by the state court, Dussett failed to produce the jail recording or

a related transcript demonstrating the existence of the alleged phone call.    While there was

evidence at trial in the form of testimony from Dussett's father, Dussett, Sr., regarding a

three-way telephone call between Dussett, his father, and the victim, Dussett, Sr., did *not*

testify that the victim admitted that he knew that Dussett did not shoot at him.    Rather,

Dussett, Sr., testified that the victim said, "Well, you *may* not have nothing to do with this, but

I know you're capable of it because we used to hang together."[46]    (Emphasis added).

Aside from Dussett's self-serving statement that the victim acknowledged in a

telephone call that Dussett did not shoot at him, there is no *actual evidence* in the record to

suggest such a statement was ever made.    Accordingly, the Court cannot find counsel

ineffective for failing to find something that does not, to the Court's knowledge, exist.

The state court's denial of relief on this claim was not contrary to, or an unreasonable

application of *Strickland*.    Dussett is not entitled to relief on this claim.

G.    Ineffective Assistance of Trial Counsel for Failing to Advise of Plea Offer

Dussett claims his trial counsel was ineffective for failing to advise him of a 10- year

plea offer by the State.    He contends that if his counsel would have informed him of the

offer, he would have accepted it.    The State responds that Dussett has not met his burden

as to this claim.

In the post-conviction proceedings, the Louisiana Supreme Court adopted the state

district court's findings.    The district court denied the claim, holding:

> The petitioner's next complaint is that his trial attorney did not inform
> him of a favorable plea offer.

---

[46]  State Rec., Vol. 6 of 12, Trial Transcript, p. 12, 8/3/11.

This claim is contradicted by the record.    At sentencing, trial counsel addressed the court, stating, "I just want to let the court know that, as this court is well aware, there was a plea offer on the table of ten years which my client did not accept."    (Transcript, Vol. 3, page 569).    As the state points out in its opposition, the petitioner was present when his attorney made her statement, but he did not contradict its truthfulness.

The court finds this claim of an unreported plea offer factually contradicted.    Relief will be denied.[47]

The Supreme Court has held in *Missouri v. Frye*, 566 U.S. 133, 138-46 (2012) and *Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 1384 (2012), that the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected.    In *Frye*, the Court specifically held that counsel has a "duty to communicate formal offers from the prosecution to accept a plea," and that, in general, where such an offer is not communicated to the defendant, counsel "[does] not render the effective assistance the Constitution requires."    566 U.S. at 145.[48]

In addition to proving that counsel's performance was objectively deficient, a petitioner must also meet his burden under *Strickland's* second prong and prove that counsel's errors actually prejudiced his case.    To prove actual prejudice in connection with plea proceedings, a petitioner must demonstrate "that the outcome of the plea process would have been different with competent advice."    *Lafler*, 132 S.Ct. at 1384.    Thus, the petitioner must show that (1) "there is a reasonable probability that the plea offer would

---

[47]    State Rec., Vol. 2 of 12, State Court Order, p. 5, 3/27/15.

[48]    In *Frye*, the Supreme Court held that defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms that may be favorable to the accused, prior to the offer's expiration, and that defense counsel's failure to inform a defendant of a written plea offer before it expired satisfies the deficient performance prong of the standard set forth in *Strickland v. Washington*.    In *Lafler*, the defendant went to trial rather than accept a plea deal as a result of ineffective assistance of counsel during the plea negotiation process.    *Lafler*, 132 S.Ct. at 1386.

have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) "that the court would have accepted its terms," and (3) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."    *Id.* at 1385 (emphasis added).

In the instant case, the state court found that Dussett failed to meet his burden to prove the underlying factual predicate of his claim: that his counsel failed to communicate plea offer for a 10-year sentence.    That conclusion is correct.    At sentencing, trial counsel for Dussett in arguing for a sentence substantially less than the maximum sentence of 50 years, stated, "as this court is well aware, there was a plea offer on the table of ten years which my client did not accept."[49]    Dussett was present in court at the time of his counsel's statement but did not dispute the representation made by counsel or contend that he was unaware of such offer.

Dussett's own filings fail to support his claim that counsel failed to communicate a plea offer to him.    In a joint supplemental brief in support of post-conviction relief filed by Dussett and Trim, they stated, "Each petitioner contends that during the plea-bargaining process they were offered a sentence that would not exceed ten (10) years.    However, counsel(s) advised them to refuse the plea offer.    (Even after Dussett write [sic] several letters expressing that although they were innocent they needed to be with their families as soon as possible."[50]    Dussett and Trim further claimed that "both Petitioners expressed a

---

[49] State Rec., Vol. 6 of 12, Sentencing Transcript, p. 3, 9/22/11.

[50] State Rec., Vol. 2 of 12, Amended and Supplemental Brief in Support of Application for Post-Conviction Relief, p. 9, 9/15/14 (dated 9/9/14).

willingness to accept the offer...." but that their counsel convinced them that the motive for the crime would not be accepted by the court and to let the offer expire.[51]     In his traverse, Dussett states that "trial counsel should not have advised petitioner to reject the plea offer" and "but for counsel's bad advice, petitioner would have accepted the State's plea offer for the reduced sentence of ten years."[52]     Given Dussett's own concessions that his counsel advised him of a ten-year plea offer, he has not established that his trial counsel's performance was deficient and the Court need not reach the prejudice prong of the *Strickland* analysis.

Based on the foregoing, it is clear that the state court's ruling that Dussett failed to meet his burden of proof with respect to his ineffective assistance of counsel claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law.     Accordingly, under the doubly deferential standards of review mandated by the AEDPA, Dussett's claim should be denied.

     H.      <u>Ineffective Assistance of Trial Counsel in Failing to Move to Quash the Information and/or Move for a Mistrial and Seek Writs against the Introduction of Evidence Related to Frankie Williams' Murder</u>

In his final claim of ineffective assistance of trial counsel, Dussett claims that his counsel was ineffective in failing to move to quash the bill of information and/or move for a mistrial or seeks writs against the introduction of evidence related to Frankie Williams' murder because probable cause was lacking where: (1) Dennis admitted he did not actually witness Williams' murder, (2) it was well known prior to trial that Dennis attempted to

---

[51]   *Id.,* at p. 10.

[52]   Rec. Doc. 16, p. 18.

barter his testimony to Dussett's father, and (3) it was never proven in a court of law that

Dussett and Trim had any association whatsoever to the crime against Williams.

In the last reasoned decision, the Louisiana Supreme Court adopted the state district

court's findings.    The state court explained:

> Significantly, the bill of indictment charged that the petitioner attempted to commit first degree murder of Conway Dennis, "wherein Conway Dennis was a witness to the crime of the murder of Frankie Williams...."
>
> Factually, the record establishes that trial counsel did in fact try to exclude references to this murder.    Prior to commencement of trial, defense counsel filed a Motion In Limine and a Supplemental Motion in Limine to Exclude references to Williams' murder.    The effort was unsuccessful, due to the admissible nature of the underlying facts.
>
> Upon review, the court finds that the petitioner has not met his burden of proving that trial counsel's efforts were substandard.    Furthermore, he has not shown impermissible prejudice because the underlying facts were properly admissible at trial and the evidence against the petitioner was overwhelming.    Relief will be denied.[53]

Lack of probable quash is not a ground to quash an information.    *State v. Smith*,

60852 (La. 4/10/78), 357 So. 2d 798, 801; *State v. Wall*, 83 KA 1137 (La. App. 1 Cir. 5/30/84),

452 So. 2d 222, 224.    Because there were no valid grounds to support a motion to quash

the bill of information, counsel was not deficient for failing to file such a motion.    Failure to

file a frivolous motion or lodge a futile objection does not cause counsel's performance to fall

below an objective level of reasonableness.    *See United States v. Preston*, 209 F.3d 783, 785

(5th Cir. 2000) (citing *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998)); *Johnson v.*

*Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.

1990)).

---

[53]    State Rec., Vol. 2 of 12, State Court Order, p. 6, 3/27/15.

Furthermore, a decision regarding whether to file a motion to quash is generally a matter of professional judgment. *Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965). Here, the amended bill of information charged that Dussett and Trim "did attempt to commit first degree murder of Conway Dennis, wherein Conway Dennis was a witness to the crime of the murder of Frankie Williams, committed on October 18, 2008 in the City of Kenner, State of Louisiana...."[54]   The information fairly apprised Dussett of the charge and was valid and not defective.   Thus, Dussett has not demonstrated deficient performance or prejudice resulting from his counsel's failure to move to quash the information.

Similarly, Dussett fails to show deficient performance or prejudice resulting from his trial counsel's failure to move for a mistrial based on the admission of evidence relating to Williams' murder.   Counsel objected to the admissibility of the statements, preserving the issue for appeal, although appellate counsel found the issue did not merit briefing.   Trial counsel's pretrial motions seeking to bar introduction of the evidence were denied by the trial court.   As the trial court had already deemed the evidence admissible, there was no basis for trial counsel to move for a mistrial based upon introduction of the evidence.

As for trial counsel's failure to seek writs regarding the admissibility of the evidence, Dussett has not shown prejudice.   Although the attorney did not pursue any further remedies once the motion to suppress was denied, such action would have been futile.   As previously indicated, the Fifth Circuit deemed the evidence admissible.   Thus, Dussett fails to show a reasonable likelihood that the outcome of the proceedings would have been different had his trial counsel sough writs.

---

[54] State Rec., Vol. 1 of 12, Superseding Bill of Information, 8/24/10.

Accordingly, the state court's denial of relief on this claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## II.    *Actual/Factual Innocence*

Dussett's final claim for relief is that he is actually innocent of the crime of which he was convicted.    The State responds that Dussett's claim is not cognizable on federal *habeas* review.

The United States Supreme Court has not recognized any free-standing actual-innocence claim to support *habeas* relief.    *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera*, 506 U.S. at 404-05); *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013); *Burton v. Stephens*, 543 F. App'x 451, 458 (5th Cir. 2013) (citing *McQuiggin*, 133 S.Ct. at 1931 and *Herrera*, 506 U.S. at 400); *In re Warren*, 537 F. App'x 457 (5th Cir. 2013).    The Court instead has recognized that a credible showing of actual innocence may act only as a gateway to overcome a procedurally defaulted or untimely filed federal habeas corpus claim and allow for review of the merits.    *McQuiggin*, 133 S. Ct. at 1931; *see*, *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (distinguishing the novel constitutional claim based on actual innocence asserted in *Herrera* from a claim of actual innocence that can, in a "narrow class of cases," excuse procedural default).    Accordingly, because there is no underlying constitutional violation in Dussett's claim, it is not cognizable and, therefore, he is not entitled to *habeas* relief.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Dussett's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[55]

New Orleans, Louisiana, this ___4th___ day of _____August_____, 2017.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[55] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.